## IN THE UNITED STATES DISTRICT COURT FOR THE
## NORTHERN DISTRICT OF FLORIDA
## TALLAHASSEE DIVISION

**RUFUS B. JONES,**

      **Petitioner,**

**v.**                              **Case No. 4:20cv35-AW/MAF**

**SECRETARY, DEPARTMENT OF
CORRECTIONS, STATE OF
FLORIDA,**

      **Respondent.**

_____/

## <u>REPORT AND RECOMMENDATION TO DENY § 2254 PETITION</u>

On January 21, 2020, Petitioner, Rufus B. Jones, a prisoner in the custody of the Florida Department of Corrections, proceeding with counsel, filed a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254. ECF No. 1.  Respondent filed an answer on April 15, 2020, with exhibits. ECF No. 5.  Petitioner filed a reply on July 22, 2020.  ECF No. 10.

The matter was referred to the undersigned United States Magistrate Judge for report and recommendation pursuant to 28 U.S.C. § 636 and Northern District of Florida Local Rule 72.2(B).  After careful consideration of all the issues raised, the undersigned has determined that no evidentiary hearing is required for disposition of this case.  *See* Rule 8(a), R. Gov.

§ 2254 Cases in U.S. Dist. Cts.  For the reasons set forth herein, the

pleadings and attachments before the Court show that Petitioner is not

entitled to federal habeas relief and this § 2254 petition should be denied.

## Procedural History

Petitioner Jones was charged by Information filed in Leon County,

Florida, with the attempted first-degree premeditated murder of Tyrone

Pleas with a firearm on or about December 25, 2010.  Ex. A at 6.[1]  Jury trial

commenced on July 27, 2011, Exs. C, D, E, and the jury found Petitioner

guilty of attempted second-degree murder, with findings that Petitioner

discharged a firearm and that he used a firearm during the commission of

the offense.  Ex. A at 35-36; Ex. E at 358-59 (transcript pagination).

Petitioner was sentenced on October 17, 2011, to a mandatory minimum

term of 20 years in prison due to the discharge of a firearm during the

offense, *see* § 775.087, Fla. Stat. (2011), with credit for 296 days.  Ex. A at

37-46, 66.

Petitioner filed an appeal to the First District Court of Appeal, Ex. A at

49-50, and filed a counseled motion to correct sentencing error in the circuit

court pursuant to Florida Rule of Criminal Procedure 3.800(b)(2).  Ex. F at

---

[1] Hereinafter, citations to the state court record, "Ex. –," refer to exhibits A through W submitted in conjunction with Respondent's answer.  *See* ECF No. 5.

71-77.  He contended that his minimum mandatory sentence pursuant to the 10/20/Life statute was unconstitutional as applied to him and that the imposition of a fine, surcharge, and certain costs was error.  The motion was denied on March 9, 2012, Ex. F at 78, and the direct appeal proceeded.[2]  On February 28, 2013, the First District Court of Appeal affirmed the conviction and sentence but reversed and remanded the imposition of the fine and surcharge.  Ex. K.  *See* Jones v. State, 107 So. 3d 563 (Fla. 1st DCA 2013) (Mem).  The mandate was issued March 18, 2013.  Ex. K.

On December 9, 2013, Petitioner filed a pro se Petition for Writ of Habeas Corpus in the First District Court of Appeal alleging ineffective assistance of appellate counsel in the direct appeal.  Ex. L.  Petitioner contends that appellate counsel should have raised a claim of fundamental error based on the trial court's jury instruction on justifiable use of deadly force.  *Id.* at 5-6.  The First District Court of Appeal denied the petition "on the merits" without further discussion on January 8, 2014.  Ex. M.  *See* Jones v. State, 131 So. 3d 810 (1st DCA 2014) (Mem).

---

[2] The issues raised on direct appeal were: (1) trial court error in denying Petitioner's "Stand Your Ground" motion for immunity; (2) whether attempted second-degree murder is a cognizable offense under Florida law; (3) whether the minimum mandatory 20-year sentence under the 10/20/Life statute is unconstitutional as applied to Petitioner under the facts of this case; and (4) whether the procedure for imposing the fine was erroneous.  Ex. H.

On March 13, 2014, Petitioner filed a counseled motion for

postconviction relief pursuant to Florida Rule of Criminal Procedure 3.850.[3]

Ex. O at 4-14.  After the State responded, an evidentiary hearing was held

on August 23, 2017.  Ex. O at 23, 67-199.  The circuit court denied relief on

the record and in a written order on August 23, 2017, adopting the reasons

stated on the record.  Ex. O at 57, 188-196.  Petitioner appealed to the First

District Court of Appeal, Ex. R, which affirmed on October 30, 2019,

holding that the circuit court did not err in finding credible the testimony of

both defense attorneys that Petitioner was advised to accept the plea offer

of five years.  Ex. V at 5.  *See* <u>Jones v. State</u>, 283 So. 3d 429, 433 (Fla. 1st

DCA 2019).  The mandate was issued on November 20, 2019.  Ex. V.

On January 21, 2020, Petitioner filed his petition for writ of habeas

corpus pursuant to 28 U.S.C. § 2254 in this Court raising two grounds for

relief:

> Ground One: Trial counsel rendered ineffective
> assistance by failing to properly advise the Defendant regarding
> the State's pre-verdict plea offer and by failing to properly
> investigate the victim's intended testimony or file a pretrial
> "Stand Your Ground" motion to apprise Petitioner of the
> proposed testimony; and

---

[3] Petitioner claimed that trial counsel rendered ineffective assistance for failing to properly advise Petitioner regarding a pre-verdict plea offer and failing to file a "Stand Your Ground" motion.  Ex. O at 4-7.

Ground Two:  Defendant's minimum mandatory sentence under the 10/20/Life Statute is unconstitutionally applied to Defendant in light of the facts in this case.

## Analysis

Pursuant to 28 U.S.C. § 2254, as amended by the Anti-Terrorism and Effective Death Penalty Act of 1996 (AEDPA), federal courts may grant habeas corpus relief for persons in state custody only under certain specified circumstances.  Section 2254(d) provides in pertinent part:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim—
>
> > (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> >
> > (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).  *See also* Cullen v. Pinholster, 563 U.S. 170, 181 (2011); Gill v. Mecusker, 633 F.3d 1272, 1287 (11th Cir. 2011).

"Under the 'contrary to' clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by this Court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts." Williams

v. Taylor, 529 U.S. 362, 412-13 (2000) (O'Connor, J., concurring). "Under the 'unreasonable application' clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id.* at 413 (O'Connor, J., concurring).

The Supreme Court has explained that "even a strong case for relief does not mean the state court's contrary conclusion was unreasonable." Harrington v. Richter, 562 U.S. 86, 102 (2011). The Court stated:

> As amended by AEDPA, § 2254(d) stops short of imposing a complete bar on federal-court relitigation of claims already rejected in state proceedings. . . . It preserves authority to issue the writ in cases where there is no possibility fairminded jurists could disagree that the state court's decision conflicts with this Court's precedents. It goes no further. Section 2254(d) reflects the view that habeas corpus is a "guard against extreme malfunctions in the state criminal justice systems," not a substitute for ordinary error correction through appeal. Jackson v. Virginia, 443 U.S. 307, 332, n.5 (1979) (Stevens, J., concurring in judgment). As a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.

*Id.* at 102-03 (citation omitted). The federal court employs a " 'highly deferential standard for evaluating state-court rulings, which demands that state-court decisions be given the benefit of the doubt.' " Pinholster, 563 U.S. at 181 (quoting Woodford v. Visciotti, 537 U.S. 19, 24 (2002)).

"Before a federal court may grant habeas relief to a state prisoner, the prisoner must exhaust his remedies in state court." O'Sullivan v. Boerckel, 526 U.S. 838, 842 (1999); 28 U.S.C. § 2254(b).  The Petitioner must have apprised the state court of the federal constitutional claim, not just the underlying facts of the claim or a "somewhat similar state-law claim." Snowden v. Singletary, 135 F.3d 732, 735 (11th Cir. 1998) (quoting Anderson v. Harless, 459 U.S. 4, 5-6 (1982)).  In order for remedies to be exhausted, "the petitioner must have given the state courts a 'meaningful opportunity' to address his federal claim." Preston v. Sec'y, Fla. Dep't of Corr., 785 F.3d 449, 457 (11th Cir. 2015) (quoting McNair v. Campbell, 416 F.3d 1291, 1302 (11th Cir. 2005)).  Petitioner must "fairly present" his claim in each appropriate state court in order to alert the state courts to the federal nature of the claim. Duncan v. Henry, 513 U.S. 364, 365 (1995); Picard v. Connor, 404 U.S. 270, 275 (1971); O'Sullivan v. Boerckel, 526 U.S. 838, 845 (1999).  "[I]t is not sufficient merely that the federal habeas applicant has been through the state courts." Picard, 404 U.S. at 275 (citation omitted)).

In regard to claims of ineffectiveness of trial counsel, the Petitioner must have presented those claims in state court " 'such that a reasonable reader would understand each claim's particular legal basis and factual

foundation.' " Ogle v. Johnson, 488 F.3d 1364, 1368 (11th Cir. 2007) (citing McNair, 416 F.3d at 1302).

This Court's review "is limited to the record that was before the state court that adjudicated the claim on the merits." Pinholster, 563 U.S. at 181. The state court's factual findings are entitled to a presumption of correctness and to rebut that presumption, the Petitioner must show by clear and convincing evidence that the state court determinations are not fairly supported by the record. *See* 28 U.S.C. § 2254(e)(1). Further, "it is not the province of a federal habeas court to reexamine state-court determinations on state-law questions" and "[i]n conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States." Estelle v. McGuire, 502 U.S. 62, 67-68 (1991). *See also* Swarthout v. Cooke, 562 U.S. 216, 222 (2011) ("[W]e have long recognized that 'a "mere error of state law" is not a denial of due process.' " (quoting Engle v. Isaac, 456 U.S. 107, 121, n.21 (1982))).

Further, under § 2254(d), federal courts have "no license to redetermine credibility of witnesses whose demeanor has been observed by the state trial court, but not by them." Marshall v. Lonberger, 459 U.S. 422, 434 (1983). "Determining the credibility of witnesses is the province

and function of the state courts, not a federal court engaging in habeas review."  Consalvo v. Sec'y, Dep't of Corr., 664 F.3d 842, 845 (11th Cir. 2011).  Credibility and demeanor of a witness are considered to be questions of fact entitled to a presumption of correctness under the AEDPA and the Petitioner has the burden to overcome the presumption by clear and convincing evidence.  *Id.*

 For claims of ineffective assistance of counsel, the United States Supreme Court has adopted a two-part test:

> First, the defendant must show that counsel's performance was deficient.  This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment.  Second, the defendant must show that the deficient performance prejudiced the defense.  This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.

Strickland v. Washington, 466 U.S. 668, 687 (1984).  To demonstrate deficient performance, a "defendant must show that counsel's performance fell below an objective standard of reasonableness."  *Id.* at 688.  Counsel is "strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." Burt v. Titlow, 134 S. Ct. 10, 17 (2013) (quoting Strickland, 466 U.S. at 690).  Federal courts are to afford "both the state court and the defense attorney the benefit of the doubt."  *Id.* at 13.  The reasonableness of

counsel's conduct must be viewed as of the time of counsel's conduct.  *See* Maryland v. Kulbicki, 136 S. Ct. 2, 4 (2015) (citing Strickland, 466 U.S. at 690).

To demonstrate prejudice under Strickland, a defendant "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."  466 U.S. at 694.  "A reasonable probability is a probability sufficient to undermine confidence in the outcome."  *Id.*  For this Court's purposes, "[t]he question 'is not whether a federal court believes the state court's determination' under the Strickland standard 'was incorrect but whether that determination was unreasonable—a substantially higher threshold.' "  Knowles v. Mirzayance, 556 U.S. 111, 123 (2009) (quoting Schriro v. Landrigan, 550 U.S. 465, 473 (2007)).  "And, because the Strickland standard is a general standard, a state court has even more latitude to reasonably determine that a defendant has not satisfied that standard."  Mirzayance, 556 U.S. at 123.  It is a "doubly deferential judicial review that applies to a Strickland claim evaluated under the § 2254(d)(1) standard."  *Id.*  Both deficiency and prejudice must be shown to demonstrate a violation of the Sixth Amendment.  Thus, the court need not address both prongs if the petitioner fails to prove one of the prongs.  Strickland, 466 U.S. at 697.

## Ground One: Ineffective Assistance of Counsel

Defendant first contends that his lead trial counsel rendered ineffective assistance by failing to properly advise him regarding the State's pre-verdict offer and by failing to properly investigate the victim's testimony or file a "Stand Your Ground" motion prior to trial to apprise Petitioner of what the victim intended to say at trial. ECF No. 1 at 8-12. He raised this issue in his Rule 3.850 motion in state court and was granted an evidentiary hearing.

At the evidentiary hearing, Petitioner, his lead trial counsel and co-counsel, and the trial prosecutor testified before the same judge who presided at Petitioner's trial. Ex. O at 67-199. Petitioner, represented by counsel, first presented the testimony of the defense attorney who acted as co-counsel. He testified that a plea offer of five to ten years, which he believes was also made prior to trial, was reduced to five years on the day of trial and was conveyed by him to lead defense counsel. Ex. O at 74-75, 88. Co-counsel testified that based on his experience practicing before this trial judge, he had no reason to believe the judge would have rejected the plea offer as a basis for sentencing. *Id.* at 75.

At the time the plea offer was made on the day of trial, there was an issue with a State's witness showing up, although when the offer was made

the defense knew the witness was coming. *Id.* at 75, 89. Co-counsel

testified that lead counsel "implied to" Petitioner's family that "I don't think

he should take this plea, I think I'm going to win this trial. . . . [a]nd he was

pretty confident about winning the trial." *Id.* at 76. Co-counsel testified that

his memory was "vague," but he recalled lead counsel advising Petitioner

something to the effect that the victim's testimony will be favorable to the

defense. *Id.* at 77. He recalled that the victim, who himself was a

convicted murderer, had been uncooperative prior to trial with both the

defense and the State, and had indicated that he did not want Petitioner

prosecuted. *Id.* at 82, 84. Co-counsel testified that when the plea offer

was made prior to trial commencing, he personally encouraged Petitioner

and his family to take the plea. *Id.* at 78. He said he personally informed

Petitioner that the charge of attempted first-degree murder with a firearm

carried the risk of life in prison with a minimum mandatory term of 20

years.[4] *Id.* at 82-83. The evidence included a taped confession of

Petitioner admitting to firing the gun that injured the victim. *Id.* at 86. Co-

counsel testified that Petitioner never told him to reject the plea offer, but

---

[4] Co-counsel testified that the plea offer also resolved a charge of battery on a law enforcement officer that arose when Petitioner was in jail prior to trial. Ex. O at 90.

indicated he would rely on his family's advice, and his family relied mostly on lead counsel.  *Id.* at 83.

Petitioner testified next at the evidentiary hearing that his lead defense counsel was confident that he could win the case.  *Id.* at 94. Petitioner testified that lead counsel told him the victim's testimony would be favorable to the defense, but he did not know if counsel ever deposed the witness.  *Id.*  Petitioner testified that lead counsel never gave him a transcript or information about what the victim would say at trial.  *Id.* at 98. Petitioner testified that lead counsel advised him to reject the plea offer of five years because they were going to win.  *Id.* at 95.  Petitioner could not recall if co-counsel had advised him to accept the plea offer, although he remembered him "kind of saying something about it."  *Id.* at 96.  Petitioner testified that, once trial commenced, he did not hear any favorable testimony from the victim and, if he had known how the victim would testify, he would have accepted the plea offer of five years up to ten years.  *Id.* at 97-98.  Petitioner's theory of defense was self-defense, but he testified that nothing the victim said at trial supported that theory.  *Id.*

On cross-examination, Petitioner conceded that the final decision whether to accept the plea offer was his, although he testified that lead counsel never told him that.  *Id.* at 102, 103.  Petitioner agreed that when

asked by the trial court if he rejected the plea offer, he confirmed that he did, but only because he was taking the advice of counsel. *Id.* at 103. He also agreed that his lead defense counsel was able to get the victim to testify that he did not know who shot him, that he did not know why he was in court, that he did not press charges, that he (the victim) was a convicted murderer, and that the victim had problems with Petitioner's mother. *Id.* at 100-02.

The trial prosecutor testified at the evidentiary hearing that he only recalled making a plea offer of five years, but was vague in his recollection of the timing.[5] *Id.* at 107. He recalled that even though the case involved an obvious shooting in the back, the victim was somewhat uncooperative in the prosecution because he was dating Petitioner's mother. *Id.* at 109. The prosecutor could not say whether the judge would have accepted the plea offer made on the day of trial because it would have departed from his normal practice, but exceptions are always possible. *Id.* at 111.

The prosecutor testified that the victim was uncooperative at a preliminary hearing and had to be taken into custody. *Id.* at 117. On the

---

[5] Lead counsel testified that prior to the day of trial, the plea offer had been ten years in prison and came down to five years only on the day of trial. Ex. O at 135. Co-counsel recalled the plea offer prior to the day of trial being between five and ten years. *Id.* at 88.

morning of trial, the victim was late arriving and when he appeared, he brought an attorney with him. *Id.* at 116. The prosecutor testified he made the offer of five years because of the difficult victim. *Id.* at 121. He recalled both defense counsel being given the offer and both counsel discussing it with Petitioner. *Id.* at 122. Both counsel rejected the offer on Petitioner's behalf, although co-counsel, who was local to Leon County, expressed the opinion to the prosecutor at some point that he thought Petitioner should have taken the plea offer. *Id.* at 124.

Petitioner's lead trial counsel testified at the evidentiary hearing that he was practicing law in Miami, Florida, when he was retained by Petitioner's family to represent him in this Leon County case. *Id.* at 129-30. Co-counsel was brought in as local counsel who was familiar with the jurisdiction. *Id.* at 131. Lead counsel recalled that the victim was very uncooperative and confrontational in a preliminary hearing. *Id.* at 132. He was aware that the victim had been to prison for murder, had expressed a desire not to prosecute, claimed he did not know who shot him, argued with Petitioner's mother, had driven around town looking for her, and had threatened her. *Id.* at 133.

Lead counsel testified that on the day of trial, when the plea offer of five years was made, he thought it was "substantially reasonable" and

"appropriate to take" in light of the risks. *Id.* at 135, 139, 153. He thought Petitioner "should have taken" the plea. *Id.* at 153. He testified he explained that to Petitioner's family, "but he [Petitioner] made that call." *Id.* at 154. Lead counsel stated: "And let me make this very, very clear. Under no circumstances did I tell him, turn down five years, let's go to trial; under no circumstances do you take five years. Absolutely not. Didn't happen. Will never happen as long as I've been practicing law." *Id.* at 154-55. He testified that he advised Petitioner to accept the five-year plea offer because it was very reasonable, especially in light of the fact that it resolved a separate case, battery on a law enforcement officer, as well. *Id.* at 160, 162.

He testified even though the victim was late for trial, and did finally show up, Petitioner decided he did not want to accept the plea "[a]nd so that's why we proceeded to trial." *Id.* at 137. Lead counsel thought there was a good chance of a win, but there is always a risk and he would never guarantee an outcome. *Id.* at 138, 142. He testified that he believed the victim's testimony would have provided favorable evidence to support a theory of use of force in defense of another—Petitioner's mother. *Id.* at 146-47, 150.

Lead counsel testified that he could not recall if he spoke to the victim other than in deposition. *Id.* at 147. He could not recall if he or co-counsel conducted the deposition, and his memory was hazy concerning the details of a deposition.[6] *Id.* at 148-49, 156. He said he could gather facts from reports and witness statements and that he discussed the case with Petitioner prior to trial. *Id.* at 156, 159.

Also presented as a joint exhibit was evidence that Petitioner's lead trial counsel was disciplined by the Florida Supreme Court in 2015, four years after the trial in this case, for having committed two federal misdemeanor offenses of tax evasion. *Id.* at 126-27. The disciplinary report also outlined numerous statements attesting to lead counsel's good character. *See id.* at 37-56

The circuit judge ruled on the record that he did not find a direct conflict between the testimony of lead counsel and co-counsel. *Id.* at 188. The postconviction court "accepted" lead counsel's testimony that he recommended Petitioner take the plea offer. *Id.* at 189. The court also accepted the testimony of both counsel that a five-year plea offer was

---

[6] At the beginning of the jury trial, the prosecutor mentioned that "counsel took his [the victim's] deposition. Ex. C at 13 (transcript pagination). Lead counsel also mentioned to the court at the commencement of trial that the victim had appeared for deposition. *Id.* at 14. The substance of any deposition testimony does not appear in the record.

made for the first time on the day of trial and that it was made of record by the court at trial. *Id.* The postconviction judge stated:

> I find that it [the plea offer] was presented to Mr. Jones and he made a decision. There was no deficient conduct. I do find based upon the testimony presented that the attorneys suggested to Mr. Jones that would be his best remedy and he rejected that. Again, as I say, it seems to me what was really happening is Mr. Jones was listening to family members, not his attorneys.

*Id.* at 192-93. The court also concluded that based on the facts of this case, it was not unreasonable for lead counsel to believe he had a winnable case. *Id.* at 194.

The court was "not convinced that the defendant would have accepted the plea offer, even if [lead counsel] was recommending it, as the defendant claims he was not." *Id.* at 195. The court found it to be established that the prosecutor would not have withdrawn the offer. However, the judge—who was also the trial judge in the case—was not convinced that the court would have accepted the plea because, as the State pointed out, "the Court's policy at that time was not to accept negotiated pleas after docket sounding, which had occurred on the Thursday prior to this trial." *Id.* The judge refused to speculate what the court would have done if the plea had been accepted by Petitioner at that

point in the proceedings.[7]  *Id.*  The court concluded Petitioner had not

carried his burden to prove that the plea would have been accepted by the

court.  *Id.* at 198.  For all these reasons, the court found Petitioner failed to

show he received ineffective assistance or that he was prejudiced by any

alleged deficiency, and denied the motion for postconviction relief.  *Id.* at

57, 196.

The postconviction court also considered the record of the trial.  *Id.* at

71-72,193.  Before opening statements at trial, the following discussion

occurred:

> **MR. BAUER [prosecutor]:**  . . . . During the break, I
> made an offer to Mr. Handfield [lead counsel] of five years in
> prison, followed by ten years probation, that includes the case
> before the Court and it also includes another pending case
> which is keeping him in on - - with no bond, or revoked his bond
> on the other case, Case No. 2011-CF-1448.  Mr. Handfield is
> not on that case, doesn't seem to be a concern of Mr.
> Handfield.  Mr. Akbar [co-counsel] is on that case.  But I have a
> good faith basis that I could get the five years on the 2011
> case.  That is battery on a law enforcement officer and resisting
> with violence.

---

[7] Counsel for Petitioner objected after announcement of the ruling, contending
that the judge had made himself a witness in the case and could not be cross-examined
on the issue of whether the plea would have been accepted by the court. Ex. O at 196-
97.  The judge overruled the objection, stating that he did not make himself a witness,
but was simply citing the policy noted by the prosecutor that the court did not normally
accept plea agreements that occurred after docket sounding.  *Id.* at 197-98.  Petitioner
unsuccessfully argued this objection on appeal from denial of postconviction relief.  Ex.
R at 8.

So I think if the Court makes an inquiry of Mr. Jones and that's rejected, we can go forward, but this is for both cases. Mr. Handfield is only on one case.

**THE COURT:**  Who is speaking on this?

**MR. AKBAR [co-counsel]:**  Your Honor, I did speak with Mr. Jones about the plea offer from the State.  And I did let him know what he is facing in regards to this particular case that we're on trial for.  And Mr. Jones did reject that plea offer.

**THE COURT:**  Stand up please, Mr. Jones.  Mr. Jones, stand up, please.  Raise your right hand.

**(Defendant Sworn)**

**THE COURT:**  State your name for the record.

**THE DEFENDANT:**  Rufus Jones.

**THE COURT:**  You heard what Mr. Bauer indicated, that they have made a plea offer of five years prison, followed by ten years probation to resolve both of your cases.  It is my understanding - -  has that offer been presented to you?

**THE DEFENDANT:**  Yes, sir.

**THE COURT:**  And you have rejected that offer; is that my understanding?

**THE DEFENDANT:**  Yes, sir.

**THE COURT:**  All right, thank you.  All right.  Ready for the jury?

Ex. C at 16-18.

The victim testified at trial that he dated Petitioner's mother, Maria, for almost three years and was living with her at her home along with Petitioner.  *Id.* at 51, 55.  He and Maria had an argument on Christmas day in 2010 and she left after he took her cell phone.  *Id.* at 59.  The victim rode around looking for her and returned home to find her there.  *Id.* at 62-63.

Maria was in the den and the victim questioned her about where she had

gone. It was not argumentative, he said, but he could not remember if he

made any threats against anyone. *Id.* at 69-70. He testified no one made

any threats against him. *Id.* at 70. He said he was not armed with a

firearm. *Id.* at 69. He then testified:

> **A** I was in the den and me and Maria was talking. And
> Brandon [Petitioner] was to [sic] the table. So when I got ready
> to leave the den and go into the room or whatever, I saw the
> screen door open. And once I passed by Rufus Jones or
> Brandon, I heard a scream, I heard Maria screaming. I made
> like I was going to open the screen - - the refrigerator door and
> took off down the hall.
>
> **Q** You took off?
>
> **A** After I heard her screaming, I mean, I took off down
> the hall and I heard a gunshot.
>
> **Q** Now what happened first, the gunshots or Maria
> screaming?
>
> **A** I don't remember.
>
> **Q** Did you hear Mr. Jones say anything or make any
> noise?
>
> **A** I don't remember because I guess the TV was up or
> something. I mean, I'm thinking it was a sporting event on.
>
> **Q** What made you run?
>
> **A** I had heard pretty much like a scream, something like
> that.
>
> **Q** How many shots did you hear?
>
> **A** I wasn't trying to count them.
>
> **Q** More than one?
>
> **A** I think the first one pinned me to the wall.

Ex. C at 70-71.  The victim testified he ran out the back of the house.  *Id.* at

75.  He called Maria on his cell phone and was trying to reach a friend's

house to be taken to the hospital, but he did not call 911, explaining, "I just

don't believe in it."  *Id.* at 77.  He reached the house and his friend's mother

came to the door and then called for help.  *Id.* at 78.

The victim testified that when he was questioned by officers in the

emergency room, he told them he did not want to press charges.  Ex. D at

93.  He was angry, however, and when asked if he wanted to kill his

assailant, he answered yes, but never gave a name.  *Id.*  On cross-

examination, the victim testified that he did not see who shot him.  *Id.* at 94.

He said, "If I didn't see who do the shooting, I mean, I didn't press no

charges.  I don't know why I'm here.  I was subpoenaed to be here."  *Id.*

He did not believe Petitioner "should be sitting where he is sitting."  *Id.* at

94-95.  He agreed that prior to night of the shooting, he and Maria had

problems and the police had been called to the home numerous times.  *Id.*

at 96.  He also agreed that when he called one of Maria's friends to inquire

where she was, he told the friend that he might kill Maria and himself, but

explained that it was only because the friend was being "nosy" and asked

whether he was planning to hurt Maria.  *Id.* at 98-99.  He denied

threatening Petitioner that night but agreed in the past they argued

frequently.  *Id.* at 103.  He denied conveying any threats to Maria or to

Petitioner that he would kill Maria and himself.  *Id.* at 106.  He testified that

when he saw Petitioner on the night of the shooting, he did not give

Petitioner any reason to fear him.  *Id.* at 108.  Evidence was presented that

three bullet holes and spent bullets were found at the residence where the

shooting occurred.  *Id.* at 136-38.

The evidence also established that Petitioner turned himself in and

told police where to find the firearm.  Ex. D at 152-53, 167.  He gave a

statement to police that when he arrived at his mother's house, he heard

her arguing with the victim.  *Id.* at 173.  He said the victim pulled a gun on

him a year ago and has a history of violence.  *Id.* at 174.  He said when he

went into the room, the victim gave him dirty looks and looked at him funny,

which is when Petitioner went and got a gun that he knew was kept under

the lawnmower.  *Id.* at 175.  When he came back with the gun, they argued

further and, according to Petitioner, the victim said, "I got something for

you, mother-fucker."  *Id.* at 176.  Petitioner then told the officer that's when

he fired shots at the victim.  *Id.*  The evidence was unclear if Petitioner was

indicating the victim hid guns around the house or Petitioner hid the guns

around the house.[8]  *Id.* at 183-84.  The officer who interviewed Petitioner

confirmed on cross-examination that Petitioner was cooperative and

remorseful and believed he acted in self-defense.  *Id.* at 186.  He also

confirmed his understanding that the victim had been uncooperative and

had threatened to kill Petitioner and his mother, although he was not told

that by Petitioner.  *Id.* at 192, 196.

After the State presented its case at trial, defense counsel moved for

a directed verdict under the "Stand Your Ground" law.  Ex. D at 204-05.

Counsel argued that the evidence showed Petitioner fired shots in his belief

it was necessary for self-defense of himself or his mother.  He argued that

the victim testified he did not think Petitioner was responsible for the

shooting, but that someone else was.  *Id.* at 204.  The trial court denied the

motion, and denied a motion for judgment of acquittal, stating:

> **THE COURT:**  The judgment of acquittal, obviously, is,
> [I]s there a theory of the State's case when taken in the light
> most favorable to the State at this time upon which a jury could
> find that Mr. Jones shot Mr. Pleas, and that it was not in self-
> defense.  The immunity issue is a little bit different standard and
> generally presented pretrial, but I think it can be made during
> the course of the trial.  Under that standard it is the defense's

---

[8] The officer testified that Petitioner said the gun under the lawnmower was put
there by the victim, and later testified that Petitioner told him that he, Petitioner, hid guns
around the house in hopes that the victim would be arrested for violation of probation.
Ex. D at 175, 180-81.  A portion of the video was played in the defense case in which
Petitioner said he knew the victim had guns around the house and Petitioner "was trying
to get multiple guns and everything so he could get time for it."  Ex. D at 215.

burden to prove by a preponderance of the evidence that the defendant did act in self-defense.

I'm going to deny both those requests. I think as to the immunity, I do not believe that the defense has proven at this point by a preponderance of the evidence that the defendant acted in self-defense. Mr. Pleas' testimony, although not crystal clear as to how things happened, would establish that he was - - that the shooting was unprovoked. I have understood the statement by the defendant which would suggest self-defense, but I think the fact that keeps me from finding that that has been established, frankly, is the fact that the shot is in the back, which is the physical back. That is undisputed.

*Id.* at 205-06.

To succeed on a claim of ineffective assistance of counsel, a petitioner must show both that (1) his counsel's performance was deficient; and (2) the deficient performance prejudiced his defense. Strickland v. Washington, 466 U.S. 668, 687 (1984). The Sixth Amendment's guarantee of effective assistance of counsel extends to plea bargaining. Lafler v. Cooper, 566 U.S. 156, 162 (2012); Turbi v. Sec'y, Dep't of Corr., 800 F. App'x 773, 774-75 (11th Cir. 2020) (unpublished).

The United States Supreme Court applied the Strickland test in the context of claims of deficient performance and prejudice regarding plea offers in Missouri v. Frye, 566 U.S. 133, 147 (2012), and Lafler, 566 U.S. at

164, and concluded Petitioner had not demonstrated entitlement to relief.[9]

Under <u>Frye</u> and <u>Lafler</u>, a defendant must demonstrate a reasonable

probability that (1) he would have accepted a plea offer but for counsel's

ineffective assistance; (2) the plea would have been entered without the

prosecution canceling it or the trial court refusing to accept it; and (3) the

plea would have resulted in a lesser charge or a lower sentence.  The state

postconviction court analyzed the claim under the requirements of

<u>Strickland</u> and addressed the <u>Frye</u> and <u>Lafler</u> factors necessary to show

deficient performance and prejudice in the context of a plea offer.  The

state court found that trial counsel did inform Petitioner of the plea offer and

did not advise him to reject it.  Further, as the state court found, Petitioner

failed to establish that he would have accepted the plea offer if he had

known what the victim would say at trial and that the trial court would have

accepted the plea offer of a five-year sentence for an offense carrying a

minimum mandatory sentence of twenty years.

　　As part of this ground, Petitioner also contends that his trial counsel

rendered ineffective assistance by failing to properly investigate the victim's

---

[9] Because <u>Lafler</u> and <u>Frye</u> merely construe <u>Strickland</u> in a new context rather than creating a new rule, the <u>Strickland</u> standard as construed in the context of the plea process is the "clearly established federal law" with which state court adjudications must comport.  *See, e.g.*, <u>In re Perez</u>, 682 F.3d 930, 932 (11th Cir. 2012).

proposed testimony or file a "Stand Your Ground" motion seeking immunity from prosecution prior to trial, which would have apprised Petitioner of the proposed testimony.  ECF No. 1 at 8-10.  He contends: "Had such a motion been filed pretrial, then [the victim] would have been required to testify pretrial and Petitioner Jones would have been able to hear his testimony and verify [lead counsel's] assertion that the alleged victim was going to be a 'favorable' witness for the defense.  Had such a motion been filed and a pretrial immunity hearing conducted—and had Petitioner Jones seen at such a hearing that [the victim] was not a 'favorable' witness—then Petitioner Jones would have accepted the State's plea offer of five years' imprisonment."  ECF No. 1 at 9-10.

Petitioner's trial prosecutor testified at the evidentiary hearing that at the time of Petitioner's trial, no "Stand Your Ground" motion had been filed in any of his cases and none was filed in this case.  Ex. O at 108. Petitioner did not present any evidence at the evidentiary hearing in support of his claim that counsel rendered ineffective assistance by failing to file a pretrial "Stand Your Ground" motion.  Counsel simply argued to the postconviction court at the conclusion of the hearing that defense counsel had a tool to elicit the testimony expected from the victim—that of a "Stand Your Ground" motion.  Ex. O at 176.  Petitioner did not argue to the

postconviction court that he was entitled to receive immunity from prosecution by way of a "Stand Your Ground" motion, only that it would have been a discovery tool. Petitioner's counsel argued to the postconviction court, "If they would have filed a stand your ground motion and if [the victim] would have given to same testimony at that point that he gave at trial, it would have clarified certainly that he's going to show up, it would have clarified it's not going to be favorable, and the plea offer still would have been on the table." *Id.* at 180. This argument is speculative and conclusory concerning how the victim might have testified at a "Stand Your Ground" hearing. Further, it is conclusory and speculative that after hearing whatever the victim testified to at a "Stand Your Ground" hearing, Petitioner would have accepted a plea offer of from five to ten years.

At the conclusion of the evidentiary hearing, the court found that it was not unreasonable for lead counsel not to file a pretrial "Stand Your Ground" motion. Ex. O at 190, 192. The court also concluded that Petitioner had not proven that the victim was never deposed. *Id.* The court found, based on the testimony at the preliminary hearing, that the State "may well have been able . . . to defeat a stand your ground motion with that testimony, along with the physical fact that [the victim] was shot in the back. . . . I don't think it's for the Court to speculate on that." *Id.* at 191.

The court noted that the "Stand Your Ground" law was evolving at the time of the trial in 2011 and it was not the norm to hold "Stand Your Ground" evidentiary hearings prior to trial. *Id.* at 192. The postconviction court also refused to speculate on what lead counsel or Petitioner would have done if they had heard the victim testify at a "Stand Your Ground" hearing. *Id.*

Petitioner appealed the denial of his Rule 3.850 motion and the First District Court of Appeal affirmed, holding in a written opinion that the circuit court did not err in finding credible the testimony of both defense attorneys that Petitioner was advised to accept the plea offer of five years. Ex. V at 5. The court explained in <u>Jones v. State</u>, 283 So. 3d 429 (Fla. 1st DCA 2019):

> The postconviction court held Jones failed to show Attorney Handfield's performance was deficient, concluding Jones had chosen not to accept his attorneys' advice when he rejected the plea offer. In reaching this conclusion, the postconviction court found no conflict between Attorney Akbar's and Attorney Handfield's testimony with respect to both advising Jones to accept the offer. This is a finding of fact which this Court will not disturb if supported by competent, substantial evidence. Here, the record supports this conclusion. Both Attorneys Akbar and Handfield testified that they urged Jones to take the plea offer. Attorney Akbar acknowledged he was not present when Attorney Handfield spoke to Jones regarding whether he should take the plea offer. The postconviction court found the testimony of the attorneys that Jones was advised to accept the plea offer more credible than that of Jones. We will not disturb this factual finding on appeal.

*Id.* at 433 (citation omitted).

Nor should that factual finding be disturbed in this Court.  Under

§ 2254(d), federal courts have "no license to redetermine credibility of

witnesses whose demeanor has been observed by the state trial court, but

not by them."  Marshall v. Lonberger, 459 U.S. 422, 434 (1983).

"Determining the credibility of witnesses is the province and function of the

state courts, not a federal court engaging in habeas review."  Consalvo v.

Sec'y, Dep't of Corr., 664 F.3d 842, 845 (11th Cir. 2011).  Credibility and

demeanor of a witness are considered to be questions of fact entitled to a

presumption of correctness under the AEDPA and the Petitioner has the

burden to overcome the presumption by clear and convincing evidence.  *Id.*

This burden has not been met.[10]

Based on the foregoing, Petitioner has not shown that the state

courts' rejection of this claim involved an unreasonable application of

clearly established federal law or that it was based on an unreasonable

determination of the facts.  *See* 28 U.S.C. § 2254(d)(1)-(2).  Accordingly,

Ground One should be denied.

---

[10] The First District Court of Appeal did not address the question of whether defense counsel should have filed a pretrial "Stand Your Ground" motion as a discovery tool to apprise Petitioner of the victim's proposed testimony.

## <u>Ground Two: Constitutionality of Sentence</u>

Defendant next contends that his minimum mandatory sentence imposed under the "10/20/Life" statute, section 775.087(2), Florida Statutes, is grossly disproportionate based on the facts that were presented at trial. ECF No. 1 at 12-14. He argues that imposing the minimum mandatory sentence on the "unusual facts" of this case constitutes cruel and unusual punishment because his defense at trial was self-defense or defense of others. Petitioner raised this claim in state court by filing a motion to correct sentencing error in the circuit court pursuant to Florida Rule of Criminal Procedure 3.800(b)(2). Ex. F at 71-77. The motion was denied, Ex. F at 78, and he appealed the issue in his direct appeal from conviction and sentence. The First District Court of Appeal affirmed the conviction for attempted second-degree murder and the minimum mandatory sentence without reference to this sentencing claim. Ex. K. *See* <u>Jones v. State</u>, 107 So. 3d 563 (Fla. 1st DCA 2013) (Mem).

Section 775.087(2) provides that any person who is convicted of a felony or an attempt to commit a felony, including murder, and who during the offense discharged a firearm, "shall be sentenced to a minimum imprisonment of 20 years." § 775.087(2)(a)1. & 2., Fla. Stat. (2010). Petitioner's minimum mandatory sentence of twenty years for attempted

second-degree murder, with the finding that he discharged a firearm, is

within the statutory limit, as determined in its broad authority by the state

legislature.

> This Court has explained:

>> The Eighth Amendment prohibits the imposition of cruel and unusual punishments. *See* U.S. Const. amend. VIII. "[T]he Eighth Amendment contains a 'narrow proportionality principle' that 'applies to noncapital sentences.' " Ewing v. California, 538 U.S. 11, 20 (2003) (quoting Harmelin v. Michigan, 501 U.S. 957, 997 (1991) (Kennedy, J., concurring in part and concurring in judgment)[8]). A non-capital sentence violates the Eighth Amendment only if it is grossly disproportionate to the offense conduct. United States v. Farley, 607 F.3d 1294, 1343 (11th Cir. 2010).

>> Generally, sentences within the statutory limits are neither excessive, nor cruel and unusual under the Eighth Amendment. *See* United States v. Flores, 572 F.3d 1254, 1268 (11th Cir. 2009); United States v. Moriarty, 429 F.3d 1012, 1024 (11th Cir. 2005). This is so because courts accord substantial deference to the legislature, as it possesses "broad authority to determine the types and limits of punishments for crimes." Solem v. Helm, 463 U.S. 277, 289 (1983); *see also* United States v. Mozie, 752 F.3d 1271, 1290 (11th Cir. 2014). Further, the Supreme Court has held that the mandatory nature of a sentence is irrelevant for Eighth Amendment purposes. Harmelin, 501 U.S. at 994-995; *id.* at 1006 (Kennedy, J., concurring); *see also* Farley, 607 F.3d at 1343 (the fact that a non-capital sentence is statutorily mandated is irrelevant to the proportionality analysis).

Owens v. Fla. Dep't of Corr. Sec'y, No. 1:16cv254/WTH/EMT, 2018 WL

5794185, at *21-22 (N.D. Fla. May 1, 2018), *report and recommendation*

*adopted*, No. 1:16cv254-MW/EMT, 2018 WL 5792820 (N.D. Fla. Nov. 5,

2018).  Petitioner failed to show that the state court's denial of his claim of cruel and unusual punishment by imposition of a minimum mandatory sentence in this case was contrary to or involved an unreasonable application of clearly established Federal law, as determined by the Supreme Court of the United States.  Nor has he demonstrated that the decision in the state court was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.  *See* 28 U.S.C. § 2254(d).

Petitioner argues that his minimum mandatory sentence is grossly disproportionate because he argued self-defense or defense of others at trial.  This contention asks the Court to assume that he proved self-defense or defense of others case at trial.  The jury verdict belies that assumption, as he was convicted of attempted second-degree murder with discharge and use of a firearm.  The trial judge denied his "Stand Your Ground" motion and motion for judgment of acquittal during trial and the state appellate court affirmed the conviction and sentence.

Petitioner has not demonstrated that his sentence is grossly disproportionate under the facts.  Contrary to Petitioner's argument that the facts of the case are unusual, the evidence established that although the victim had conflicts with Petitioner's mother and had threatened her in the

past, and he argued with Petitioner, Petitioner told police that he did not like the looks the victim was giving him, so he retrieved a gun he knew was hidden under a lawnmower, returned to the house, and shot the victim in the back as he was walking down the hallway.  None of these facts is extraordinary or unusual, and the facts do not support a finding that the legislatively-mandated sentence is "grossly disproportionate" to the crime. The jury rejected a claim of self-defense or defense of another.  The fact that the trial judge may have imposed a lesser sentence if he had the discretion to do so[11] does not prove that the legislatively-mandated sentence is unconstitutional as applied to Petitioner.  For all these reasons, habeas relief under Ground Two should be denied.

## Conclusion

Based on the foregoing, Petitioner Rufus B. Jones is not entitled to federal habeas relief.  Accordingly, the § 2254 petition (ECF No. 1) should be denied.

## Certificate of Appealability

Rule 11(a) of the Rules Governing Section 2254 Cases in the United States District Courts provides that "[t]he district court must issue or deny a certificate of appealability when it enters a final order adverse to the

---

[11] *See* Petitioner's argument, ECF No. 1 at 14.

applicant," and if a certificate is issued "the court must state the specific issue or issues that satisfy the showing required by 28 U.S.C. § 2253(c)(2)."  Rule 11(b) provides that a timely notice of appeal must still be filed, even if the court issues a certificate of appealability.

Petitioner fails to make a "substantial showing of the denial of a constitutional right."  28 U.S.C. § 2253(c)(2); <u>Slack v. McDaniel</u>, 529 U.S. 473, 483-84 (2000) (explaining substantial showing) (citation omitted). Therefore, the Court should deny a certificate of appealability.

The second sentence of Rule 11(a) provides: "Before entering the final order, the court may direct the parties to submit arguments on whether a certificate should issue."  The parties shall make any argument as to whether a certificate should issue by objections to this Report and Recommendation.

Leave to appeal in forma pauperis should also be denied.  *See* Fed. R. App. P. 24(a)(3)(A) (providing that before or after notice of appeal is filed, the court may certify appeal is not in good faith or party is not otherwise entitled to appeal in forma pauperis).

## <u>Recommendation</u>

It is therefore respectfully **RECOMMENDED** that the Court **DENY** the § 2254 petition (ECF No. 1).  It is further **RECOMMENDED** that a certificate

of appealability be **DENIED** and that leave to appeal in forma pauperis be

**DENIED**.

      **IN CHAMBERS** at Tallahassee, Florida, on July 28, 2020.

                  **s/ Martin A. Fitzpatrick**
                  **MARTIN A. FITZPATRICK**
                  **UNITED STATES MAGISTRATE JUDGE**

## NOTICE TO THE PARTIES

      **Within fourteen (14) days after being served with a copy of this Report and Recommendation, a party may serve and file specific written objections to these proposed findings and recommendations. Fed. R. Civ. P. 72(b)(2).  A copy of the objections shall be served upon all other parties.  A party may respond to another party's objections within fourteen (14) days after being served with a copy thereof.  Fed. R. Civ. P. 72(b)(2).  <u>Any different deadline that may appear on the electronic docket is for the Court's internal use only and does not control</u>.  If a party fails to object to the magistrate judge's findings or recommendations as to any particular claim or issue contained in a Report and Recommendation, that party waives the right to challenge on appeal the district court's order based on the unobjected-to factual and legal conclusions.  *See* 11th Cir. R. 3-1; 28 U.S.C. § 636.**